IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

Plaintiff,

vs.

Case No. 05-40141-01-SAC

CRISTINO A. GARCIA,

Defendant.


MEMORANDUM AND ORDER

Defendant is charged with multiple counts of illegal firearm and drug possession.  This case comes before the court on defendant's motion to suppress (Dk. 20).  The government opposes the motion.  (Dk. 24).  Following an evidentiary hearing held on March 23, 2006, the court is ready to rule.

The motion challenges two warrantless searches: the search of defendant's vehicle subsequent to his arrest on August 17, 2005, and the search of defendant's person and a vehicle he drove on October 28, 2005.

Defendant seeks to suppress all physical evidence seized from the vehicles he drove and all statements he made on those dates.  The government contends that both vehicle searches were incident to arrest or were supported by probable cause.

**Facts**

### AUGUST 17, 2005

Salina Police Department Investigator Shane Ashton testified to the events which occurred on August 17, 2005.  At approximately 2:15a.m. on August 17, 2005, Amber Ovalle related facts to the Salina, Kansas police department indicating that defendant and a second unknown Hispanic male unsuccessfully attempted to kidnap her from her home. Ovalle reported that when the two left, defendant, whom she had identified from a photo line up, smashed the windshield of her parents' truck with a maglite flashlight.

Investigator Ashton interviewed Amber Ovalle then drove to defendant's residence to conduct surveillance on his house.  At approximately 6:30 a.m., Officer Ashton saw a white Chevrolet Tahoe

back out of the driveway.  While following the Tahoe, Officer Ashton

recognized defendant as the driver, then initiated a traffic stop.  Officer

Ashton advised defendant there were four warrants for his arrest, and asked

him to exit the vehicle.

As defendant was exiting the vehicle, Officer Ashton saw

defendant move his right hand, which was cupped, back toward the interior

of the vehicle where the driver's seat meets the middle console.  Officer

Ashton was concerned that defendant was throwing something into the

vehicle or attempting to reach for something in the vehicle, so grabbed

defendant's arm.  Defendant attempted to push past Officer Ashton and a

struggle ensued.  Defendant resisted arrest for approximately two minutes

until Officer Ashton sprayed defendant's face with pepper spray.  This

subdued the defendant until other officers could arrive and assist.  Three

officers then arrived and handcuffed and searched defendant.  Two

throwing knives were found on his person.  Defendant was subsequently

transported to the Salina Police Department.[1]

---

[1]Evidence failed to reveal where defendant was when the vehicle search was
conducted or the length of time between defendant's arrest and the search.

3

Officer Ashton told his supervisor about defendant's gesture toward the vehicle, and Officer Randy Jennings searched defendant's vehicle.  Officer Jennings testified that at the time, defendant was somewhat incapacitated, and he had no concerns that defendant could obtain access to the interior of the vehicle.  During the search, he found a cigarette package containing methamphetamine in the area of the front console where Officer Ashton had said defendant may have tossed something.  In the middle console he found a Hot-Shot Taser.  Between the console and the front seat, Officer Jennings found a miniature baseball bat which he believed matched the description of an item used in the kidnapping incident related by victim Ovalle.  A fully loaded .22 handgun was found in between the driver's seat and the middle console.[2]

Officer Jennings testified that the vehicle had an invalid license tag, so he secured the vehicle and seized the evidence.  His department's standard procedure is to do a complete inventory of the vehicle's contents before it is taken to an impoundment lot and he did so, completing an

_____

[2]The testimony did not establish whether any of these items were in plain view.

inventory sheet.  Because the vehicle could not be legally driven, an inventory search was completed and the vehicle was towed from the scene and impounded.

Officer Ashton subsequently Mirandized defendant  and questioned him about the items found in his vehicle.  When asked about fingerprint evidence on the gun, defendant responded that he did not know if his prints would be on the gun, then refused further comment.

### OCTOBER 28, 2005

On October 28, 2005, at 3:21p.m., Salina police officers went to a residence where an aggravated assault with a handgun had been reported.  Victim Jason Vermillion said the suspects were Justin Bacca, Cristino and Jose, and that they had left the scene in a silver Ford Crown Victoria, bearing an unknown tag.

Officer Michael Lind testified that approximately thirty minutes later, he observed and followed a silver Lincoln Continental which contained three occupants.  He thought it was a good possible match to the vehicle reportedly involved in the aggravated assault.   Because the assault

involved three suspects and the use of a handgun, Officer Lind did not wish

to confront the suspects without backup officers present, so did not

conduct a traffic stop.  However, soon after he began following the

vehicle, it parked at a residence in the 400 block of Hazel Court.  Officer

Lind recognized Justin Bacca as he exited from the back seat, and

recognized defendant, Cristino A. Garcia,  as he exited the driver's seat.

Officer Lind knew of only one "Christino" that was a Hispanic male.  A

third male whom he did not recognize exited from the front passenger's

seat.

Upon seeing defendant exit the silver vehicle with Justin

Bacca and a third male, Officer Lind believed that these were in fact the

three persons involved in the aggravated assault with a handgun reported

less than one hour earlier.  He therefore stopped his patrol car, removed his

service weapon, pointed it at the three suspects, and ordered them to get on

the ground.  After Officer Lind repeated this order several times, the three

complied.  Back up officers arrived soon thereafter and handcuffed the

suspects.  Dispatch confirmed that defendant's driver's license was

revoked, and he was placed under arrest for that offense and for the

aggravated assault charge.[3]  All three subjects were searched.  The key to

the vehicle was found in defendant's pocket, but no gun was found.

Officer Lind asked the three suspects if they knew the owner of

the house whose lawn they were on.  Two did not respond, and one shook

his head, indicating "no."  The officer then spoke with the resident of the

house who told him she did not recognize either the vehicle or the

suspects.  Officer Lind then believed that the suspects had exited the

vehicle in an attempt to elude officers, and decided to search the vehicle.

When defendant had been removed from the scene and was en

route to the police station, Officer Lind used the key taken from

defendant's pocket, unlocked the vehicle, and searched it.  He testified that

he searched the vehicle because he believed the gun used in the aggravated

assault was in the vehicle, and that he had no concern that defendant had

access to the interior of the vehicle at the time of the search.  Officer

Lind's search revealed an unloaded handgun under the driver's seat on a

---

[3]Testimony additionally established that defendant had no proof of insurance
and was issued a citation for that offense.

bracket.  In the driver's door pouch he found a pill bottle containing numerous rounds of small caliber ammunition.

Because defendant did not own the vehicle, dispatch contacted the registered owner, Laura Cardona.  She later came to the scene and removed the vehicle.

**General  rule**

"[A] search conducted without a warrant ... is per se unreasonable ... subject only to a few specifically established and well-delineated exceptions."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  "[T]he government has the burden of proving that an exception to the warrant requirement applies." *United States v. Maestas*, 2 F.3d 1485, 1491 (10th Cir. 1993).  The government does not contend that either search was made for officer safety or during a protective sweep, or that other exceptions to the warrant requirement apply,  and does not challenge defendant's standing.  The government relies primarily upon the search incident to lawful arrest exception.

**Search  incident to arrest exception**

It has long been established that a warrantless search of the passenger compartment of an automobile may be made when the vehicle's "occupant" is arrested.

> "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of the arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (emphasis added). This court has concluded, however, that "[a] warrantless search incident to arrest is not valid if it is 'remote in time or place from the arrest.' " *United States v. Lugo*, 978 F.2d 631, 634- 35 (10th Cir. 1992) (quoting *Chimel v. California*, 395 U.S. 752, 764, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)). A search incident to arrest is unlawful when a suspect is arrested, removed from the scene, and en route to the police station when the search of the arrestee's passenger compartment begins. *Id.* at 635.

*United States v. Dennison*, 410 F.3d 1203, 1209 (10th Cir. 2005).

In 2004, the United States Supreme Court broadened the scope of the incident to arrest exception to include "recent occupants" of the vehicle. *Thornton v. United States*, 541 U.S. 615 (2004). In *Thornton*, the defendant was handcuffed, arrested, and placed in the back seat of the patrol car at the scene of the arrest at the time of the actual search. Notwithstanding that fact, the Supreme Court in *Thornton* held that the

search of the automobile was an incident to a lawful custodial arrest.

*Thornton* held that the rule of *Belton, i.e.*, the lawful arrest of an occupant

of an automobile made the ensuing search of the vehicle a search incident

to a lawful arrest, was extended to include, not just an "occupant," but

would also include a "recent occupant."  *United States v. Sumrall*, 115

Fed. Appx. 22, 26 (10th Cir. 2004).  Accordingly, in *Sumrall*, the Tenth

Circuit upheld a search of a vehicle despite the fact that the defendant was

handcuffed and seated in the patrol car at the time.

The reason for expanding the rule is based on the need for a

clear rule, even if contraband is not within the immediate reach of the

arrestee.

The Supreme Court emphasized that *Belton* applies to both
"occupants" and "recent occupants" of a vehicle. It therefore
concluded that even though not all contraband in the passenger
compartment may be readily accessible to a recent occupant, "[t]he
need for a clear rule ... justifies the sort of generalization which
*Belton* enunciated." *Id.* at 2132.  The Supreme Court held that
"[o]nce an officer determines that there is probable cause to make an
arrest [of a recent occupant of a vehicle], it is reasonable to allow
officers to ensure their safety and to preserve evidence by searching
the entire passenger compartment." *Id.*  It further held that "[s]o long
as an arrestee is the sort of 'recent occupant' of a vehicle such as
petitioner was here, officers may search that vehicle incident to the

10

arrest." *Id.*  An arrestee's status as a "recent occupant" may turn on his temporal and spatial relationship to the car at the time of the arrest and search.  *Id.* at 2131.

*Brown v. Fisher,* 2006 WL 470580, *6 (D. Kan. 2006) (finding where officers had probable cause to arrest a recent occupant of the vehicle, it was reasonable for the officers to search the passenger compartment).  *See generally United States v. Brothers*, 438 F.3d 1068 (10th Cir. 2006).

Both *Thornton* and *Belton* are based on the need for a clear rule which does not depend on differing estimates of what items were or were not within the reach of an arrestee at any particular moment.  *See Thornton,* *5. *See generally Belton*, 453 U.S. at 459 (rule based on overriding desire to hew to "straightforward rule, easily applied, and predictably enforced"); *United States v. Edwards*  2004 WL 1534173, *5 (D. Kan. 2004).  Cases have yet to define the scope of the temporal and physical proximity limitations under *Thornton*, although searches incident to arrest are routinely justified where a defendant is removed from a vehicle, handcuffed, and still at the scene in a police car.  *See e.g., United States v. Humphrey*, 208 F.3d 1190, 1202 (10th Cir. 2000) (upholding

search incident to arrest without citing *Lugo*, after defendant was

handcuffed and placed in patrol car); *United States v. Robinson*, 2005 WL

946524, *3 (D. Kan. 2005) (finding vehicle was lawfully searched incident

to his arrest, even though he was handcuffed at the time).

In this case, the government has not met its burden to establish

facts sufficient to show that either the August or the October search was

incident to arrest.  As to the October search, uncontradicted testimony

establishes that defendant was removed from the scene of his arrest and

was en route to the police station at the time the vehicle was searched.

The government cites no cases which have extended the reach of the search

incident to arrest exception this far, and states no rationale in support of

such an extension.

As to the August search, there is an absence of proof that the

search was conducted as a contemporaneous incident of defendant's arrest.

Neither temporal nor physical proximity has been shown between

defendant's arrest and the search.   The court remains unaware of how

close or far defendant was at the time the search occurred or how much

time elapsed between his arrest and the search.  Although *Thornton* broadened the scope of the incident to arrest exception to include "recent occupants" of the vehicle, the court is not persuaded that its reach extends this far.

**Inventory search**

The court finds that the August search of defendant's vehicle is justified as an inventory search, based on the testimony of Officer Jennings, which the court finds to be credible and persuasive.

> An inventory search of a vehicle is a "well-defined exception to the warrant requirement of the Fourth Amendment." *Bertine*, 479 U.S. at 371; *see also Haro-Salcedo*, 107 F.3d at 772.  An inventory search is constitutional if (1) it is conducted according to established procedures and (2) it is designed to produce an inventory rather than being a cover for general rummaging.  *See United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003).

Officer Jennings testified that the vehicle had an invalid license tag and thus could not be legally driven and that his department's standard procedure in such cases is to do a complete inventory of the vehicle's contents before it is taken to an impoundment lot.  He stated that he complied with standard procedure in searching the vehicle, completing an

inventory sheet, and having the vehicle towed to the impound lot.  In short,

an inventory search was completed and the vehicle was towed from the

scene and impounded in accordance with standard procedures of the police

department.   Items in the passenger compartment would thus have been

inevitably discovered through independent legal means.  *United States v.*

*Griffin*, 48 F.3d 1147, 1150 (10th Cir. 1995) (quoting *United States v.*

*Ford*, 22 F.3d 374, 377 (1st Cir.), *cert. denied*, 513 U.S. 900 (1994)).  "If

the prosecution can establish by a preponderance of the evidence that the

information ultimately or inevitably would have been discovered by lawful

means ⋯ then ⋯ the evidence should be received."  *Nix v. Williams*, 467

U.S. 431, 444 (1984); *United States v. Larsen*, 127 F.3d 984, 986 (10th

Cir. 1997).

All items found in the challenged search were found in the

passenger compartment.   Because the items would have been inevitably

discovered pursuant to a lawful inventory search, the government has met

its burden to show the lawfulness of the warrantless search in August.

**Probable cause**

The government additionally contends that both searches were made pursuant to probable cause.  The government asserts that even absent exigent circumstances, probable cause is sufficient justification for a warrantless search of a vehicle.

The automobile exception to the search warrant requirement was first recognized by the United States Supreme Court in *Carroll v. United States*, 267 U.S. 132 (1925).  "Under the automobile exception, 'police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant.' " *United States v. Oliver*, 363 F.3d 1061, 1068 (10th Cir. 2004) (quoting *Florida v. Meyers*, 466 U.S. 380, 381(1984) (per curiam)).  Thus a warrantless search of a vehicle is permissible if there is probable cause to believe that the vehicle contains contraband.  *See California v. Carney*, 471 U.S. 386, 392 (1985); *United States v. Crabb*, 952 F.2d 1245, 1246 (10th Cir. 1991) (finding "neither exigent circumstances nor practical barriers to obtaining a warrant," and

concluding that "time and opportunity to obtain a warrant are irrelevant, as constitutional analysis ends with finding probable cause"), *cert. denied*, 504 U.S. 925 (1992).

The Tenth Circuit has recently reaffirmed this exception, in holding:

> A police officer may conduct a warrantless search of an automobile if there is "probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under law." *United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir. 2002).

*Untied States v. Alcaraz-Arellano*, __ F.3d __, 2006 WL 805323, *6 (10th Cir. 2006) (finding consent unnecessary and upholding officer's search of vehicle supported by probable cause).  "The rationale for the automobile exception is based on both the inherent mobility of cars (as it is often impracticable to obtain a warrant before a car can be driven away) and the fact that there is a reduced expectation of privacy with motor vehicles." *Mercado*, 307 F.3d 1226, 1228 (10th Cir. 2002) (finding a defendant's unusual actions toward a vehicle sufficient to give the officer probable cause to believe that he was trying to hide contraband.)

The "automobile exception" has no separate exigency

16

requirement. *Maryland v. Dyson,* 527 U.S. 465, 466-467 (1999); *United States v. Ross*, 456 U.S. 798, 809 (1982). *See United States v. Malouff*, 114 Fed. Appx. 975, 980 (10th Cir. 2004) (affirming denial of motion to suppress based on finding officer had probable cause to search vehicle.); *United States v. Robinson,* 2005 WL 946524, *3 (D. Kan. 2005). "If supported by probable cause, every part of a vehicle which may conceal the object of the search may be searched." *Alcaraz-Arellano*, __ F.3d. __, 2006 WL 805323, *6 (10th Cir. 2006), quoting *United States v. Zucco*, 71 F.3d 188, 191-92 (5th Cir. 1995).

> Probable cause to search a vehicle is established if, under the 'totality of the circumstances[,]' there is a 'fair probability' that the car contains contraband or evidence.

*United States v. Nielsen*, 9 F.3d 1487, 1489-90 (10th Cir. 1993). In determining whether probable cause exists, an officer "may draw inferences based on his own experience." *Ornelas v. United States*, 517 U.S. 690, 700 (1996) (quotations omitted). Courts should "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. McRae*, 81 F.3d 1528, 1534 (10th

17

Cir. 1996) (quotations omitted).

The court finds it unnecessary to determine whether the August 17, 2005 search was supported by probable cause, given its finding that the search was independently justified under another exception to the warrant requirement.

Regarding the October search, no challenge is made that the officer lacked probable cause to arrest defendant.   The court examines whether under the 'totality of the circumstances, ' there was a 'fair probability' that the car contained contraband or evidence.   At the time of the search, the officer: 1) was aware of the report that Justin Bacca, someone  named "Cristino," and Jose had assaulted the victim with a handgun and had left the scene in a silver Ford Crown Victoria, bearing an unknown tag; 2) saw defendant, whom he knew to be named "Christino," approximately 30 minutes after the reported aggravated assault;  2) saw defendant exit a vehicle whose description was a good possible match to the one used by the suspects who had committed the aggravated assault; 3) saw defendant exit the vehicle with Justin Bacca and another male,

matching the identification of the three suspects involved in the aggravated assault; 4) upon searching all three suspects, knew no gun was found on the person of any of the three subjects; 5) knew the suspects did not know the owner of the house at which they had stopped.

Under the totality of the circumstances known to Officer Lind, a reasonable officer would have had probable cause to believe that the handgun used in the aggravated assault may be in the vehicle defendant had been driving.  In short, there was a fair probability that the vehicle contained evidence of defendant's recent crime involving a handgun.  The warrantless search of the vehicle was thus proper based on probable cause. *See United States v. Chatman*, 994 F.2d 1510, 1514 (10th Cir. 1993); *United States v. Edwards*,  2004 WL 1534173, *6 (D. Kan. 2004); *United States v. Prieto-Zubia*,  103 F. Supp. 2d 1292, 1295 -1296 (D. Kan. 2000); *United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997).

IT IS THEREFORE ORDERED that defendant's motion to suppress (Dk. 20) is denied.

Dated this 19th day of April, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge